May it please the court. My name is Lauren Velastro and I represent the Galley Appellants. This case is about access to justice for foreign landowners harmed by a Vermont certifier's conduct in Vermont. Okay, cool. What is the nature of the injury that your clients have suffered by virtue of the conduct of Rainforest? Not the extent of it, not that we need a trial to determine. What bad thing has happened to your client as a result? Property damage in the forest. No, no, tell me what, really. Cut trees, cleared. Rainforest Alliance didn't cut any trees. They increased the risk of harm. Rainforest Alliance didn't cut a single tree. You'll acknowledge that, right? Yes, Your Honor. What harm did Rainforest Alliance, by certifying that these people who you say own this property were using good ecological forestry standards, what harm did they cause to your client? Because all they did was say those folks use good ecological forestry standards. That's not all they did. They directed the cutting of the trees, the clearing of the roads, and they incentivized that conduct, too. That claim depends on the galleys' ownership of the land in question, right? Yes, Your Honor. And the Mexican courts have held that they do not own it. No, not at all. There are four places in the Mexican court order in which the Mexican court was clear that the galleys owned the property that was in dispute. Well, they own the property. In their deeds. In their deeds, but not the property falling within the certification. Does the Mexican court ever, other than the Tuacan one, does the Mexican court ever determine one way or another that the galleys do or do not own the property? Yes, Your Honor. Didn't the Mexican court say the galleys own the property in their deeds, but, frankly, we can't tell from the deeds whether this property is in there or not? Isn't that what the Mexican court said? No. What the Mexican court said is we can't specifically identify precisely where the trespasser is occupying the land that the galleys do own. You — that wasn't exactly how I read it, but okay. But you — but there was a failure of proof in the Mexican court, right? Yes. Failure of proof. So there is no definitive decision from the Mexican court that the trespassers, as you call them, are actually on land that you own. That's correct. Okay. But the court was clear there. The galleys do own the property. If you look at that — You just told me — you just told me that I was right when I said the court didn't say that, that the court said that there was still an open question because there was a failure of proof. Maybe I was unclear. The court in Mexico said that the galleys failed to identify exactly where the AXA entity was on that property. And how is Judge Reese supposed to be able to do a better job of that? Well, she doesn't need to. The issue of trespass is not dispositive as to the galleys' claims of negligence and slander of title against Rainforest Alliance. You said that it was possible for Judge Reese to determine ownership and trespass for the purposes of your tort claims, and it really wouldn't matter whether that had any bearing on what was the fact on the ground in Mexico? Did I understand you to say that? She does not have to touch the issue of trespass because the rain — You have to touch the issue of ownership. Yes, Your Honor. And how is she better positioned to do that than a Mexican court? Well, the Mexican court found the galleys own the property, and all that Judge Rice needed to do was look at the specific location that Rainforest certified because there are coordinates, latitude and longitude coordinates, and the only things that need to be considered are those coordinates and then where the galleys own the property. The Mexican court dismissed the galleys' claims to the ownership of the property, right? No, that case was a trespass case. It was not a quiet title action case. I understand that, but the trespass case depended on AGSA not owning the property, and those claims were dismissed by the Mexican courts, as I understand it. You didn't win the trespass case, did you? No. They failed to prove where AGSA was trespassing. You lost. But if this were a quiet title — But you want a judge in Vermont to say that they're trespassing. No, Your Honor. That doesn't make any difference here. We want the court in Vermont to allow us the opportunity to show that the Rainforest certification covered parts of our property, and certainly we believe — But AGSA is trespassing on, and the injury is supposedly that AGSA is cutting down your trees, right? Can you repeat that? I'm sorry. And AGSA is trespassing on and cutting down your trees, right? You have no injury if AGSA is not trespassing because your theory is that they're on your land cutting your trees. Well, there's also a slander of title claim in which Rainforest — It also requires ownership on the part of your client. It does, indeed. And they've lost on that claim. I respectfully disagree. There are four places in the Mexican order in which that — Your claims were dismissed by the Mexican. I mean, look at what was the bottom line of the Mexican actions. They lost on their various claims, which were predicated on owning the property. True? They satisfied that element, the ownership element. They did fail to prove the specific location of the trespass. We have asserted here that we will submit new evidence. You want to retry the ownership claim? In Vermont. In Vermont, about land in Mexico. They're Mexican. The land is in Mexico. The trees are in Mexico. Nothing is in Vermont. Except for the — Except for the great weather. Except for the wrongdoer in this case. The galleys had an opportunity — People who didn't cut down the trees and who aren't occupying the property. But who slandered my client's title. You're correct, Your Honor, that the galleys had the opportunity to pursue relief against AXA. But Vermont is the only place, which I believe Rainforest has conceded, that the galleys can bring claims against Rainforest for its negligent conduct. But if ownership has to be determined in order to, as Judge Chin said, establish a slander of title claim, you're proposing that ownership be established in the absence of AXA, which claims that it owns the property. How can the judge do that in Vermont? That's really a simple question, or a simple answer. The court in Vermont only need adjudicate our claims against Rainforest vis-a-vis Rainforest. Court's in Vermont for 91 years. Rainforest isn't claiming ownership of the property. AXA claims ownership of the property. AXA isn't in Vermont. Agreed. And no relief requested here will directly affect AXA. And the court can craft that kind of relief. Why don't you finish up? Go ahead. What is your theory of slander of title here as to the defendant here? Our theory is that the Rainforest Alliance stated that AXA is the legal owner of property owned by the galleys, and there is no support whatsoever for that proposition in the Mexican litigation. So you ask us to look at the Mexican order, and you want us to read somewhere in the Mexican order a resolution about the title. Is that right? No, Your Honor. We don't believe that that Mexican litigation had any definitive effect on the title of that property. I don't believe a trespass action here would have any effect on the title ownership of property. If this were a quiet title action in Mexico, we would be, admittedly, in a different posture. How can you slander title that's not quiet? The only reference to ownership of the property in the Mexican litigation was that the galleys own it. That they own what they own. They own what's in their deed. And admittedly, that order is unclear. And that's another reason that, you know, the – That's another reason why a Vermont judge should get involved in a Mexican land dispute. Because it's not clear. In an unclear order. The Mexican litigation can be put aside entirely, and the claims at issue here are where Rainforest certified the galleys' property. And if the galleys can't prove that they own that property, they can't prove it. But they are entitled to the opportunity to try. And Vermont courts have been allowing that kind of transitory property adjudication for almost 100 years. We have your argument, and you have some rebuttal time. We'll hear from the other side. May it please the Court. Samuel Spital on behalf of Rainforest Alliance. I want to pick up with exactly what the Mexican court said. Because I respectfully disagree with the statements made by the galleys' counsel that the Mexican court stated that the galleys own the land. In fact, as I believe this court, Judge McMahon in particular, was noting, what the Mexican court said was the galleys own the property in their deeds. But then it went on to say, and this is at A1-196, with respect to the – it's first looking at the property other than Tucan One. And with respect to that, it said, property titles displayed by plaintiff do not correspond to the land area – I'm sorry. What page? A1-196. It's a little hard to see because the – The numbers are stamped on top of each other. Yes. So it's – if you go to the top pages, it would be at – 21 of 28? 21. Yes, Your Honor. And where on that page are you referring to? This is at the bottom of the page. Okay. So it's a long sentence, but that language at the end, do not correspond to the area that he claims, referring to Mr. Galley, the respondent referring to AGSA, has in its possession. So that's with respect to the areas outside of Tucan One. Your position is it says they own what they own, and that's in their deeds. What's in their deeds does not correspond to where AGSA is. Exactly, Your Honor. And that's stated with respect to the area outside of Tucan One at 196. Then a similar statement with respect to Tucan One at 197, A1-197. And the conclusion in A1-198 is that the evidence in this case in no way favors the Galleys' claims that there's any – that they own this disputed parcel, which they've characterized as the invaded property. So we submit that the Mexican court did determine that the Galleys do not own this If they do not – if that issue is not relitigated, there is no way that the Galleys can state a claim for either slander of title or negligence under Vermont law. And so for that reason, we believe that this is a straightforward case of international comedy and that, therefore, the district court correctly dismissed the complaint. Don't you win even if we apply the forum nonconvenience standard of comedy to the slander of title claim? Well, Your Honor, we – That's a yes or no question. We think there would probably have to be further proceedings, honestly. So – There's got to be more information about that. Yes. Because the – and I want to be very clear that we litigated this case as an estoppel-type comedy case. In their response, the Galleys treated it as a forum nonconvenience-type case, and I think that's why you maybe see both strands talked about by the district court. But one of the factors that the district court did talk about, which is often an important factor in the forum nonconvenience strand, is whether the respondent would be subject to jurisdiction in the forum forum. And that is an issue that has not been resolved. So, therefore, we're relying solely on the estoppel-type comedy. And with respect to international comedy, I'd also like to note that the Galleys have not provided any sort of basis as to why the court would not – would allow re-litigation. There are certain exceptions where sometimes a court will allow re-litigation, but – and the Galleys kind of hint at two of them in their reply brief. But they do so, in our view, based on misstatements about the information that was presented below. So the Galleys state, I believe at page 5-6 of their reply brief, that there was information presented below as to the unfairness, essentially, that there was maybe fraud in this proceeding or corruption. But what they cite to is at A1-161 to A1-175 of the record. And those are not documents suggesting that there was any fraud or impropriety in the Mexican court trespass action. Those are complaints that the Galleys filed with the National Human Rights Commission in Mexico, essentially asking the Attorney General to initiate criminal proceedings against AXA. No statement whatsoever that the Mexican trespass court was infected with any sort of corruption. The other statement they make in their brief, and I believe this is at page 4 of the reply brief, is that there is some new, previously unavailable evidence, new satellite imagery that they would like to present. But if you look at what they cite for that proposition, that's at A1-103 to 104 of the appendix. It's a brief that they filed where they simply state that now they have another expert who is going to confirm, in their view, what their expert said in the Mexican  And that expert has an affidavit filed, which is at A2-205, and he doesn't say anything about this being new evidence or new techniques that he would rely on. In fact, on the contrary, he says that he's been doing this kind of work for 25 years. There's no suggestion that was ever made to the district court about there being previously unavailable evidence. And so the district court correctly recognized that the Galleys had not submitted any sort of basis as to why international incomity would not be applied. I don't know if the court would like me to address our arguments with respect to the merits of the claims besides international incomity. It's up to you. If the court has no further questions, I'll rest. Thank you. We'll hear the rebuttal. I'd actually like to ask, not you, but your opponent, what exactly is the nature of the duty that Rainforest Alliance owes to your clients? That's easy. In the principles that they apply, the very first stakeholder that they undertake to protect are landowners and even people with potential claims to land. They say, we can't really ---- No, Rainforest Alliance was never hired by your clients. You don't have any kind of contractual relationship. You don't have any kind of business dealings with Rainforest Alliance. You mean some general hortatory principle creates a duty on the part of Rainforest Alliance to every person who owns land on this planet? That they certify the ownership of. They didn't certify the ownership. They certified that good tree-cutting practices were being used. They didn't certify the ownership. They did state that the Galleys don't own the property and that AGSA does. Counsel pointed out page A1, 196, at the bottom of the page, and the Mexican court says that the plaintiff's titles do not correspond to the area of land he claims the respondent has in his possession. How is that not a determination that the Galleys have failed to prove ownership of property within the certification? I'm not an expert on Mexican law, and I would submit that we ought to have an expert. No, no, no. So is this an English translation that you agreed to? Yes, yes, Your Honor. Okay. So would you answer Judge Chin's question? It says, do not correspond to the area of land he claims the respondent has in his possession. That's a fact-finding. It's not a legal thing. The discrepancies in that property, and this is why we presented or asked the district court to look at what that building. But you also appealed, and then the appellate court in Mexico affirmed, right? That the Galleys failed to prove with specificity where Axel was trespassing. But if I may make one final point on that, to fully answer your question. One final point, sure. Go ahead. The Mexican expert upon which the entire order is based and the appeal decision too, he initially stated that the Galleys absolutely proved their ownership, the location of the trespass, and then 18 months later, with no basis at all, he decided that because there are a few feet of The Mexican court heard the experts and made its decision, right? As to the trespass claim, yes, Your Honor. Thank you. We'll reserve decision. Thank you.